Thermoid Company v. Commissioner.
Thermoid Co. v. Commissioner
Docket No. 1088.
United States Tax Court
1945 Tax Ct. Memo LEXIS 223; 4 T.C.M. (CCH) 412; T.C.M. (RIA) 45139; April 21, 1945
*223 Under a plan of recapitalization, each share of outstanding preferred stock was exchanged for 1 1/3 shares of new preferred stock of the same corporation and holders of the new preferred stock received on each share of new preferred stock a dividend of three shares of common stock in lieu of all arrears of dividends on the old stock. Held, the common stock was issued as part of the plan of recapitalization and in a tax-free exchange, and was not a taxable dividend entitling the corporation to a dividends paid credit. A. Harry Moore, Esq., 921 Bergen Ave., Jersey City, N.Y., for the petitioner. Robert *224 S. Garnett, Esq., for the respondent. TYSON Memorandum Opinion TYSON, Judge: The respondent determined deficiencies in income tax of $49,325.18 for 1936 and $12,334.30 for 1937. The sole question presented is whether the petitioner should be allowed dividends paid credits in the taxable years for dividends paid in shares of its common stock. All of the facts have been stipulated and those not set forth herein are included by reference. [The Facts] The petitioner is a Delaware corporation which has its principal office at Trenton, New Jersey. It filed its returns for the taxable years with the collector for the first district of New Jersey. The issue arises out of a plan for the recapitalization of the petitioner, which went into effect on September 30, 1936. On September 30, 1936, the petitioner had a deficit of $1,410,811.50, and there had accumulated on its outstanding 31,578 shares of seven per cent cumulative convertible preferred stock of the par value of $100 per share (hereinafter sometimes referred to as the old preferred stock) unpaid dividends of $1,171,054.50, amounting to about $38.50 per share. Its outstanding common stock consisted of 296,096 *225 shares of the par value of $1 per share. On August 19, 1936, the petitioner's directors adopted a resolution proposing a reduction of its capital to the extent of $2,736,760, and recommended that such reduction be accomplished by reducing the capital represented by the 31,578 shares of old preferred stock from $3,157,800 to $421,040. On August 26, 1936, the directors prepared a proposed amendment to the petitioner's certificate of incorporation which provided that the authorized capital stock should consist of 825,000 shares, divided into 50,000 shares of convertible preferred stock of the par value of $10 each, and 775,000 shares of common stock of the par value of $1 each. The amendment contained provisions applicable to the respective classes of stock as follows: "(a) The holders of Convertible Preferred Stock shall be entitled to receive, when and as declared by the Board of Directors * * * dividends at the rate of Three Dollars per share per year and no more, * * * payable quarterly * * * * *
"(f) The holder of any of the Convertible Preferred Stock shall have the right at any time at his option to convert any Convertible Preferred Stock held by him into Common Stock *226 of the Corporation at the rate of three shares of Common Stock for each share of Convertible Preferred Stock so offered for conversion, * * * * *
"(i) The holders of Convertible Preferred Stock and of Common Stock shall at all times be entitled to one vote for each share of such stock held by them respectively, except as provided in subdivision (m). * * * * *
"(k) Upon the amendment to the Certificate of Incorporation (which creates the Convertible Preferred Stock) taking effect, 42,104 shares of Convertible Preferred Stock shall be issued pro rata to the holders of certificates for 31,578 shares of 7% Cumulative Convertible Preferred Stock in substitution therefor. All holders of shares of 7% Cumulative Convertible Preferred Stock shall surrender the certificates therefor to the Corporation for cancellation and shall receive and accept in lieu thereof certificates for one and one-third shares of Convertible Preferred Stock for each share of 7% Cumulative Convertible Preferred Stock. It is the intent of the Corporation and the holders of shares of 7% Cumulative Convertible Preferred Stock, through such amendment to the Certificate of Incorporation, to eliminate all shares *227 of 7% Cumulative Convertible Preferred Stock and all rights appertaining thereto or accruing by virtue of ownership thereof, and to substitute therefor the above-mentioned shares of Convertible Preferred Stock. * * * "(1) The holders of the shares of Convertible Preferred Stock issued pursuant to subdivision (k) hereof, * * * shall be entitled in addition to the quarterly cash dividends provided for in subdivision (a) * * * to a dividend of three shares of Common Stock for each share of Convertible Preferred Stock, such dividend to be payable when and as declared by the Board of Directors. Such dividend in shares of Common Stock is in lieu of all dividends in arrears on the former 7% Cumulative Convertible Preferred Stock. The conversion rate as set forth in subdivision (f) shall not be increased because of issuance of the shares of Common Stock provided for in this subdivision (1). "(m) In case the Corporation shall have failed to declare and pay on or before March 1, 1937 the dividend in shares of Common Stock described in subdivision (1) * * * then so long as such dividend shall remain unpaid on the Convertible Preferred Stock, the holders of the Common Stock shall have no voting *228 power, and the holders of the Convertible Preferred Stock shall exclusively possess voting power for the election of directors and for all other purposes. If, however, said dividend in shares of Common Stock shall be fully paid by the Corporation to holders of Convertible Preferred Stock at any time, then and thereupon the right of the holders of the Convertible Preferred Stock to vote as provided in this subdivision shall cease." A meeting of the petitioner's stockholders was called on September 25, 1936 for the purpose of considering and acting upon the proposed reduction of capital and authorizing the amendment of the certificate of incorporation. The stockholders were given legal notice of such meeting and were furnished with copies of the resolution of the directors of August 19, 1936 and of the proposed amendment to the articles of incorporation. The president of the petitioner, under date of August 28, 1936, addressed a letter to the stockholders in which he summarized the changes proposed to be made and to which he attached an "Analysis of Proposed Recapitalization" which contained the following statements: That the items to be corrected are the elimination of the deficit, *229 and sinking fund requirements on the old preferred stock; that, among other factors in their favor, the holders of the old preferred stock will receive for each share of such stock 1 1/3 shares of new convertible preferred stock, plus four shares of common stock; and that the holders of the common stock will benefit because the arrears in dividends on the old preferred stock will be eliminated without affecting the petitioner's cash or working capital, and elimination of the deficit and arrears in dividends will facilitate refinancing of the corporation's maturing gold notes and prevent a reorganization under section 77-B of the Bankruptcy Act. The plan for the reduction of capital and the proposed amendment of the certificate of incorporation, in the form submitted by the directors, were approved by the stockholders on September 25, 1936, and all certificates required under the law of Delaware to perfect the amendment to the certificate of incorporation were filed by petitioner. The plan and its provisions as set forth in the certificate of incorporation, as amended, became effective on September 30, 1936, and were consummated. On December 14, 1936, the directors declared a special *230 dividend of one share of common stock on each share of new convertible preferred stock. The dividend was payable on December 28, 1936 to holders of new convertible preferred stock of record on December 21, 1936, and to persons becoming holders of record of such stock on or after December 22, 1936, upon exchange of old certificates for certificates for the new convertible preferred stock. On December 28, 1936, the petitioner issued to holders of recold of new convertible preferred stock of record on December 21, 1936, 37,944 shares of its common stock. The shares of common stock so issued had a market value of $417,384 on December 28, 1936. On January 21, 1937, the directors declared a special dividend of two shares of common stock on each share of new convertible preferred stock. The dividend was payable on February 10, 1937, to holders of new convertible preferred stock of record on February 3, 1937, and to persons becoming holders of record of such stock on or after February 3, 1937 upon exchange of old certificates for certificates for the new convertible preferred stock. On February 10, 1937, the petitioner issued to holders of new convertible preferred stock of record on February 3, 1937, 81,112 *231 shares of its common stock. The shares of common stock so issued had a market value of $959,847.50 on February 10, 1937. The resolutions declaring the dividends of common stock were passed, and the 37,944 and 81,112 shares of common stock were issued to holders of new convertible preferred stock in accordance with the provisions of the plan of recapitalization. The petitioner concedes that under the plan as approved and put into effect on September 30, 1936, there was a recapitalization, and hence a statutory reorganization, within section 112 (g) (1) (d), Revenue Act of 1936, but only to the extent that new preferred stock was exchanged for the old preferred stock. It contends that the reorganization involved only the exchange of old preferred shares for new preferred shares, and that the distribution of the shares of common stock to the preferred shareholders, pursuant to the dividend declarations of the board of directors, was a transaction separate and distinct from the exchange of preferred shares and outside of the reorganization and therefore was a taxable stock dividend for which it is entitled to a dividends paid credit under section 27 (a) and (e) of the Revenue Act of *232 1936. The respondent contends that the provision for distributing the common stock as a dividend was an integral part of the plan of reorganization and the shares of such stock were received by the preferred shareholders as part of the consideration for their old preferred shares; that the common stock was received by them in a tax-free exchange of the kind described in section 112 (b)(3), and was not a taxable dividend in the hands of the preferred shareholders and, being non-taxable, the petitioner's claim for a dividends paid credit is not allowable under section 27 (h). The plan of recapitalization, as set forth in the amendment to the petitioner's articles of incorporation and as approved and carried out, does not vary in any substantial particular from the plan which we considered in , wherein the contentions were the same as those presented here. Our decision therein has been affirmed by the ; and it has been approved by the Circuit Court of Appeals for the Sixth Circuit in . Upon the authority of *233 those decisions, we sustain the contention of the respondent herein. See also . It is of no importance that it is stated in the plan that the common stock dividend should be payable "when and as declared by the Board of Directors", or that such dividend was distributed several months after the approval of the plan. The obligation of the corporation to issue the common stock dividend was mandatory, and in the event of failure to do so by March 1, 1937 the preferred shareholders were empowered to take control and maintain control of the corporation and elect their own directors until the stock was issued. The preferred shareholders entitled to the stock thus absolutely controlled the issuance of the stock and could have had it issued at any time after March 1, 1937 if it had not theretofore been issued. Decision will be entered for the respondent.